## Case No. 4,885.

### FLORENCE SEWING MACH. CO. v. SINGER MANUF'G CO.

[4 Fish. Pat. Cas. 348;[1] S Blatchf. 177.]

Circuit Court, S. D. New York. Feb. 4, 1871.

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

Ebenezer R. Hoar and Augustus L. Soule, for plaintiffs.

Edwin W. Stoughton and George Gifford, for defendants.

Before WOODRUFF, Circuit Judge, and BLATCHFORD, District Judge.

WOODRUFF, Circuit Judge. The plaintiff is a licensee of three associated companies, namely, the defendant, the Wheeler and Wilson Manufacturing Company and the Grover and Baker Sewing Machine Company. By the terms of the license, the plaintiff agreed to pay a license fee or royalty of five dollars for each machine made and sold in the United States, and two dollars for each machine exported; and, under the license, the plaintiff was making and selling machines to such a number, at the time when the bill herein was filed, that the amount of fees payable at the specified rates was nearly twenty-five thousand dollars a quarter, or nearly one hundred thousand dollars a year, payable in quarterly payments, on rendering quarterly accounts of the machines manufactured and sold in each quarter. The license contained a provision, that the associated companies should not license the making of a dropfeed shuttle sewing machine using two threads, at a less patent rent, without a corresponding reduction in the patent rent thereby reserved; and, also, a reservation to the licensers, of the right to terminate the license, at their option, on thirty days' notice, for any breach of the agreement by the plaintiff.

The bill of complaint herein alleges, that the licensers gave such a license to a third party as operated to reduce the plaintiff's rent or fee to forty cents for each machine; that the plaintiff has paid to the said associates $63,912, since the right to the reduction arose; and that the larger part thereof was paid in ignorance of the fact, and the residue under a protest that it was not due, but was paid in order to prevent a revocation of the license, which was threatened, and which would, as the plaintiff alleged, be very injurious to its business. The bill prays a decree establishing the plaintiff's right to a reduction in the rent or license fee, and directing a repayment of the sums overpaid, and that the defendant be enjoined from giving notice of an option to terminate the license, and from attempting to collect the sums reserved as rent or license fee by the terms of the license.

After the filing of the bill, the plaintiff applied to this court, by motion, for an injunction, pendente lite, to restrain the defendant according to the prayer of the bill, having offered, in the bill, to deposit with such receiver as the court should name, all such sums as the patent rent, under the terms of the license, would amount to, for each quar-

ter which should expire during the pendency of this suit, at the times when the same would fall due, the said sums to be held by such receiver subject to the order of this court, and to await the final decree in this suit. Thereupon, on the 8th of January, 1870, the court ordered that an injunction issue, restraining the defendant, until the further order of this court, from giving notice to the plaintiff of a termination of the license, and from attempting to collect license fees or patent rent thereunder, on condition, "that the plaintiff deposit with the clerk of this court all moneys which shall become due under said license, according to the full patent rent reserved therein, on or before the tenth days of each and every January, April, July and October, * * * said moneys to be deposited by the clerk with the United States Trust Company, * * * on interest, to the credit of the suit, and subject to the order of this court." An injunction was issued in pursuance of such order, addressed to the defendant, enjoining such defendant as in the order directed; and, in performance of the condition prescribed in the order, and under a subsequent modification thereof reducing the rate of fees, the plaintiff has paid to the clerk of this court, from quarter to quarter, sums which, including the quarter ending on the 1st of October, 1870, amount to $76,793, which is now on deposit, at interest, as directed.

The cause was brought to a hearing upon pleadings and proofs, and, in December, 1870, the decision of the court thereon, was made—Florence Sewing Mach. Co. v. Singer Manuf'g Co. [Case No. 4,884]—that the bill should be dismissed on two grounds—first, that no case was made appealing to the jurisdiction of a court of equity, or requiring the interference of the court to determine the rights of the parties; and, secondly, that the relief sought by the bill could not be granted in a suit to which the Wheeler and Wilson Manufacturing Company and the Grover and Baker Sewing Machine Company were not parties. The court, therefore, declined to pass upon the merits of the controversy, and the question whether the license fee or rent payable by the plaintiff has been affected or reduced by the acts of the associated companies since the license was granted, remains wholly undetermined. Upon the publication of the decision of the court, and before a final decree has been settled and entered, the plaintiff has applied for an order that the money paid to the clerk, and now on deposit as above stated, be repaid to the plaintiff; and, on the other hand, the defendant has made a cross motion or application, asserting title to the money as in truth the proceeds of the use of the patents covered by the license, and profits made by such use by the plaintiff during the period in which the defendant has been, by the injunction of the court, restrained of its legal right to revoke the license, and

that, the plaintiff having failed to establish, in this suit, the right to a reduction of the rent or fee, the defendant is entitled, according to the just construction of the condition upon which the plaintiff took the injunction, to have the money paid over for the use and benefit of the defendant and the companies thus associated with the defendant, in satisfaction, pro tanto, of their claim to license fees while the court has held them in restraint, and thereby protected the plaintiff in the use of their patents.

The question presented by the circumstances above detailed and by the motion of the parties respectively, is novel and embarrassing. So far as we have derived aid from counsel, and so far as my examination has extended, it is without precedent. The money was undoubtedly paid to the clerk, and made subject to the order of the court, in the expectation that the court would, in this suit, determine, by its final decree, upon the pleadings and proofs, whether the plaintiff was still bound to pay the full license fees or rent reserved to the defendant and the other associated companies, or whether, on the other hand, the plaintiff was entitled to retain the license on paying the reduced rent which the plaintiff insisted was alone due, and in the expectation that the money, paid in, would thereupon be paid over to the defendant, for the use of the associated licensers, or would be apportioned between them and the plaintiff, according to such rights as were found to arise out of an adjudged reduction of the license fee.

The money paid in was the money of the plaintiff. However true it is, that it was the precise amount of the license fee reserved to the associated companies for the use of their patents, and, in a sense, may be the fruit or proceeds of the use of their property, presumptively earned in such use, and even derived therefrom, by the plaintiff, by a use of their patents against their will, still, the money itself was the plaintiff's money, and the plaintiff, in paying it over under the order made upon a voluntary offer to pay it, did not admit for a moment that the money was due to the defendant and the other associates, but was acting throughout in denial of their right, and was earnestly insisting that they were largely overpaid at the time the bill was filed; and the money was offered to be paid, and was in fact paid, in confidence that the court would retain it, not suffering it to pass to the defendant, or to the defendant and the other companies, unless it should be adjudged due under the license.

It is equally clear, that the defendant did not suppose, and could not suppose, that paying the money to the clerk, ex vi termini, gave the defendant and the other associates a title to the money, or that, if the court should adjudge that the plaintiff's license fee had, by the acts of the defendant and the other associates since the license was

granted, been reduced to forty cents for each machine, the plaintiff would not be entitled to an order of the court, (after proper computation,) for the repayment to the plaintiff of the whole or of a considerable part of the money. To this may be added the further suggestion, that, if the court had decided the question between the parties on the merits either way, and the decree had been appealed from, it cannot be doubted that the party appealing would have insisted that no order disposing of the fund should be made pending the appeal.

The court having declined to determine the controversy on the merits, the plaintiff re-asserts title to the money, claiming that the purpose for which it was paid has failed, while the defendant insists, that, as the plaintiff has failed to establish a right to a reduction of the fee in this suit and by a decree herein, the defendant is entitled to the money, as prima facie due upon the face of the license, and that the condition, on which the restraint was imposed, should be construed to mean, that the money should be paid to the defendant for the use of the associates, if, in and by this suit, such right to a reduction was not decreed in the plaintiff's favor; and that, to hold otherwise, is to lend the aid of the court to a great injustice, in this, that, but for the interference of the court by injunction, the plaintiff would have been, by revocation of the license, prevented from using the patents, or would, by action, have been compelled to pay the associates the very money now in question. Obviously, this last suggestion assumes that the defendant could have successfully revoked the license, or have compelled the plaintiff to pay the whole rent originally reserved—the very claim which this court declined to determine, and which this court cannot now assume in the defendant's favor. Yet, it is equally obvious, that the consideration upon which the plaintiff offered to pay the money, and for which the plaintiff did pay the money to the clerk, has not wholly failed. The plaintiff did thereby obtain an injunction, and restrained the defendant from interfering with the use of the patented inventions, and from attempting to collect the license fee or rent, and did thereby secure to itself the uninterrupted use of the inventions and such profit as might accrue therefrom.

In this conflict of claim, so peculiar and so complicated, the essential inquiries are—why was the money paid to the clerk of this court?—what protection to the defendant was intended thereby?—what purpose was to be effected?—and, from the answer, it must be determined what equitable rights result from the payment.

The technical suggestion, that, because the money was paid in by the plaintiff, in the suit, it became so identified therewith, that, when the court declines to decide the merits and dismisses the suit, the money goes out of court with the plaintiff and ceases to be subject to any order of the court, save the formal order of repayment, is not quite satisfactory. There is, it is true, a species of logical sequence in the suggestion, but it largely overlooks the enquiries last above suggested and the equities which may result from the very facts, that the plaintiff offered to pay in the money in order to obtain the protection which the injunction gave, and that the defendant was required to submit to the restraint, suffer the uninterrupted use of the patents, and forego all attempts to collect the money; and the suggestion further assumes, that the money was subjected to no order of the court which does not, in this suit, determine the title to the license fees or patent rent and the amount payable from the plaintiff.

The defendant and the associated companies held the agreement of the plaintiff for the payment of the license fees stipulated therein. They also had the unquestionable right to terminate the license if the amount of fees actually due or accruing were not paid. The plaintiff was actually using their inventions for its own profit. As to the company made defendant here the plaintiff was a foreign corporation, and could not be sued upon the agreement, for the collection of the money, in this district. In this posture of the parties, the plaintiff, alleging that, at that time, the defendant and the other associates were overpaid, and claiming that the license fees had, by acts subsequent to the license, been largely reduced, asked that the defendant be put under injunction, forbidding the revocation of the license, which revocation was the clear legal right of the defendant, if the plaintiff could not establish a right to a reduction, forbidding the defendant from bringing an action to collect the fees, which were as clearly due, as a legal right, if the plaintiff could not establish the title to a reduction, and even restraining the defendant from bringing an action to test the plaintiff's claim to a reduction. As a necessary incident, the plaintiff secured to itself the uninterrupted use of the licensed inventions and, what was deemed of great importance to the plaintiff, the opportunity to prosecute the litigation without hazard of losing the license, or losing any right to the money paid, if it established its right to a reduction. That is to say, the plaintiff would hold on to the license, whether right or wrong in the litigation, and not lose its claim to the money, if successful. For these by no means inconsiderable advantages to the plaintiff, and summary disadvantages wrought to the defendant, the plaintiff offered and accepted the condition of paying the money to the clerk, subject to the order of the court. To what end? Was it that the defendant should, by the very acceptance of the condition and the payment of the money, gain any equivalent for the advantage gained by the plaintiff and the disadvantage wrought

to the defendant and the other associates? Was it that the money should be brought within convenient reach and be, by the very transaction, made subject to the defendant's claim to license fees?

Again, the plaintiff is a corporation, presumptively dividing its gains among its shareholders. No allegation is made here that it was not, nevertheless, perfectly solvent and able to pay all the fees which had accrued, at whatever rate may be finally established, and it might not be assumed, as a presumption, that it would not be able to pay all that should accrue during the litigation. But, on the other hand, the defendant had a right to insist, on behalf of the associates, that no risk whatever should, by the action of the court, be cast upon them; that the plaintiff ought rather to be required to pay the money to them, in reliance on their solvency and ability to refund, if it should be determined that the license fee was reduced; that the accruing quarterly payments were very large and the duration of the litigation very uncertain; that the defendant and the other associates ought not to have their hands tied, and be restrained of the opportunity to test their legal rights, to find, after, it might be, years of litigation, that the plaintiff, (though without any fraud or dishonesty,) in the fluctuations and vicissitudes which affect the prosperity of business of every sort, had become unable to pay the large arrears which would accrue if the defendant was right in the claim to the full license fees reserved. In this view of the subject, was not the defendant to derive some benefit from the payment of the money to the clerk, as a security and protection against the possible loss of what should be due at the termination of the litigation? The offer by the plaintiff, the condition imposed by the court on granting the injunction, and the paying of the money, ought not to be permitted to operate as a delusion. They were certainly not so intended. The proceeding against the defendant was wholly in invitum. Some protection to it against the possible consequences of restraining the assertion of its alleged legal rights was intended. A consideration was offered and accepted for the immunity granted, pendente lite, to the plaintiff. It is not the fault of the defendant that the plaintiff came into this court without a cause of action which warranted an appeal to the court, as a court of equity, or came into a court in which the relief could not be granted for want of necessary parties. For all the purposes of these motions, the decision that the plaintiff did so come must be taken to be correct. The plaintiff chose voluntarily so to come, and, so coming, subjected the money to the order of the court, for the protection and benefit of the defendant, who was in constant resistance of the plaintiff's endeavor.

What, in equity, is the result? I cannot resist the conclusion, that the circumstances gave to the defendant an equitable lien upon the fund—not a lien created by the license—not a lien or title established by any decision that the whole fee or rent reserved by the license is payable—but a lien resulting solely from the paying in of the money for the security and protection of the defendant, and as the consideration upon which the plaintiff obtained and accepted an actual benefit, and placed the defendant at disadvantage and in a condition of risk or hazard. This protection and security the defendant ought not to be required to relinquish, for the mere reason, that it turns out that (according to the views governing the decision the court has made) the plaintiff ought not to have come into this court at all in the form and manner it came, and had no case for any injunction. To order the payment of the money to the plaintiff, on the ground that, although the bill be dismissed, the merits are undecided, is to make the error the court were invited, by the offer of the plaintiff, to commit, the ground for accomplishing the precise injustice against which the condition of granting the injunction was intended to guard. The equities of the defendant seem to me analogous to the rights which would have arisen in its favor, if the condition of granting the injunction had been a pledge of money or other security for the payment of whatever sums might accrue to the defendant and the other associated companies pending the injunction. If the pending suit ascertained and settled the amount due, the disposition of the money would be simple and convenient. But it would by no means follow, that, if that litigation failed to settle the question on the merits, the pledge could be withdrawn, the plaintiff having had the benefits of the injunction in the meantime.

For these reasons, I conclude that the court ought not to order the repayment of the money to the plaintiff. The defendant has acquired an equity which arose not out of the license, nor out of the mere litigation of the questions raised by the bill of complaint, but out of facts arising after bill filed, and proceedings collateral to the issues therein—proceedings intended to be protective of the defendant, and conservative of the rights of the plaintiff. Such an equity has not been lost. It can still be preserved and protected, and I think there is no want of power in the court to preserve and protect it.

It does not follow that the defendant is entitled to an order that the money be paid to the defendant, as the amount, or on account, of license fees accrued, nor as payable according to the proper construction of the condition on which the injunction was granted. That condition did not contemplate the disposition of the money except upon some ascertainment that the defendant and the other associated companies were entitled to receive from the plaintiff the whole or some part of the fees or rent reserved in the license. Such ascertainment has not been

made, and, to direct the payment to the defendant, would, in substance, be, to determine the question between the contestants, on this motion, which, on the pleadings and proofs in the suit, the court declined deciding.

If, in fact, the condition prescribed in the order had been, that the plaintiff pay in the accruing fees or rent at the rate prescribed in the license, to be paid over to the defendant for the benefit of the associated companies, if the plaintiff should not prevail in the suit, then it might be regarded as a consequence consented to, and of which the plaintiff could not afterwards complain, but the order does not so read, and the submission of the disposition of the money to the order of the court shows that that order must proceed upon some future ascertained right.

What, then, shall be done with the money? If the court refuse an order for the payment to either of the parties, shall it remain on deposit indefinitely? If I am correct in the views I have expressed, that question may, perhaps, be answered by another. Suppose, as a condition of granting the injunction, the court had required a pledge, as security, in terms, for the payment of whatever fees or rent should accrue and be of right payable pending the injunction, what would be done with the pledge, on the dismissal of the present bill of complaint? The plaintiff ought not to be permitted to withdraw the pledge. The defendant ought not to be permitted to appropriate the pledge, while the amount of fees or rent of right payable is in contest and undetermined.

I admit that the case is novel, and the condition of the fund, and, perhaps, the relation of the court to the fund, is peculiar. But it seems to me that, until, in some appropriate proceeding, either at law or in equity, the question between the parties is determined, this court can make no order disposing of money now held for the defendant's security. Whether that determination shall be had in this court—whether the disposition of the money has not, by its payment to the clerk, been so submitted to its jurisdiction that such a determination may be had here, on grounds which were wholly inapplicable to the suit which was brought by the plaintiff—whether the defendant should proceed at law to establish its right to rent or fees according to the terms of the license, and then apply, in a summary form, for the order which would give effect to the deposit as a security for their payment—whether such an adjudication in any court of competent jurisdiction would not warrant such summary application—and whether the equitable lien which, in my opinion, the defendant has acquired, may be executed by a suit in the nature of a foreclosure of any right or equity of the plaintiff—are questions upon which we are not here called upon to express an opinion. There is no doubt that, on the determination of the question in dispute, this court has power and jurisdiction to give effect to the deposit of the money as a security and apply it as the rights of the parties may then require

The motions should be denied.

BLATCHFORD, District Judge. The plaintiffs, licensees from the Grover and Baker Sewing Machine Company, the Wheeler and Wilson Manufacturing Company, and the Singer Manufacturing Company, under patents held by those companies, filed the bill in this suit against the latter company alone. The substance of it was, that, by reason of acts done by the licensers, the plaintiffs were, by the terms of their license, entitled to have the license fee of five dollars for each machine not exported, and two dollars for each machine exported, contracted to be paid by the license, reduced to forty cents for each machine; that the plaintiffs, on such view, had overpaid the licensers by more than $58,000, up to the filing of the bill; and that the licensers threatened, if the plaintiffs refused further to pay according to the rates specified in the license, to terminate the license, by notice, under a clause therein to that effect. The plaintiffs offered, in the bill, to deposit with a receiver the future patent fees to accrue at the rates reserved in the license, as they should become due thereunder, "the said sums to be held by such receiver subject to the order of the court, and to await the final decree in this suit." The bill averred, that the licensers other than the defendants, were, one of them a Connecticut corporation and the other a Massachusetts corporation, and they were not made parties because this court would have no jurisdiction over them, the plaintiffs being a Massachusetts corporation and the defendants a New York corporation. The bill prayed that the defendants be ordered to reduce the patent fee reserved in the license to forty cents for each machine, and to account with the plaintiffs for, and pay to them, the sums received by the licensers under the license, to which they were not entitled, and that the defendants be restrained from giving notice, during the pendency of this suit, to the plaintiffs, of their option to terminate the license, and from attempting to collect patent fees from the plaintiffs, until the further order of the court.

On the filing of the bill and after a hearing on notice, an order was made by the court, that an injunction issue restraining the defendants, until the further order of the court, from giving notice of a termination of the license and from attempting to collect patent fees thereunder, on condition that the plaintiffs deposit with the clerk of this court all the moneys which should become due under the license according to the full patent fees reserved therein, quarter yearly, as provided in the license, said moneys to be deposited by the clerk with the United States Trust Company in the city of

New York, on interest, to the credit of this suit, and subject to the order of this court.

When such order was presented to the court to be settled and signed, it contained the following clause, which the court struck out before signing it: "And it is further ordered, that, in case complainants fail to recover in this suit, they shall pay to the defendants an amount sufficient to make them receive seven per cent, per annum on the sum or sums paid to the clerk as herein directed, from the time of such payment or payments to the time when the injunction hereby ordered shall be dissolved, and that the same shall be added to and taxed in the costs to be taxed for the defendants."

An injunction in conformity with this order as so settled and entered, was issued and served on the defendants. Subsequently, the rates of payment were, for future machines, fixed, by order of court, at three dollars for each machine not exported, and one dollar for each machine exported, as being, by agreement of the licensers and the plaintiffs, the full license rates for future machines, if the plaintiffs were not entitled to the reduction claimed by them. Under these orders the plaintiffs have paid to the clerk of the court the sum of $76,793, which is on deposit, on interest, at the rate of 4 per cent. per annum, in the United States Trust Company, to the credit of this cause, and subject to the order of this court.

Meantime the cause went to final hearing on pleadings and proofs. The conclusions of the court in the cause were: (1.) That the plaintiffs did not require the aid of a court of equity to exercise or maintain the rights asserted by their bill, but their remedies were complete, both offensive and defensive, without such aid, to resist an attempt to stop their working under the license, or to defend a suit for license fees already paid, or to bring a suit to recover back license fees overpaid; (2.) That the relief asked could not be given without directly affecting the two licensers who were not made parties to the suit, and that, therefore, it could not be given, as respected the defendants. On these two grounds, the conclusion of the court was, that the bill must be dismissed, the merits of the controversy not having been considered or disposed of.

The case being thus ready for the entry of a final decree on such decision, the plaintiffs now apply to the court for an order that the clerk pay to them the moneys so deposited by them with him, together with all interest which has accrued thereon. The defendants also apply for an order that the clerk pay to them such moneys and interest.

The court did not, by its decision, dispose of the merits of the controversy raised by the plaintiffs in their bill. So far as any action of this court is concerned in respect to such merits, the controversy is exactly where it was when the bill was filed, and

before the injunction was issued or any of the money was deposited. The object of depositing the money was to secure the licensers against loss, in case the court should, on the merits, decide that the licensers were still entitled to fees at the license rates, and that the plaintiffs were not entitled to the reduction claimed. The money deposited was the plaintiff's money and continued to be such until the court should decide, on the merits, that the licensers were entitled to it under the license. To award the money now to the defendants would be to decide the merits in favor of the defendants. This the court has declared it cannot do in this suit. The case stands as if, as a condition of the granting of the injunction, the plaintiffs had given a bond, with sureties, conditioned to pay to the defendants, if the court should, in this suit, decide, on the merits, that the licensers were entitled to them, the full license fees provided for by the license. On such a decision as has been made in this case, there could be no recovery on such bond.

The view urged on the part of the defendants is, that the money was deposited subject to the right of the plaintiffs to show affirmatively in this suit a better title to it than the title of the licensers; that the money, when deposited, became, prima facie, the money of the licensers, subject to such right of the plaintiffs: that the plaintiffs have failed to establish such right; and that, therefore, the money must go to the defendants. This view is not sound. The money was deposited subject to the determination of the title to it. It has not been established, on the merits, that the plaintiffs owe it to the licensers under the license. The title to it has not passed from the plaintiffs, and has not passed to the licensers or to the defendants. If it had been established in this suit that the plaintiffs owed it to the licensers, it would have gone to the defendants, on such determination. A contrary determination would have carried it to the plaintiffs by a title reposing on such determination.

The suggestion that the money was, under the order of the court, deposited with the clerk to the credit of the suit, and that, as the defendants have been successful in dismissing the bill, they must, therefore, have the money, is not warranted by the action of the court. The money was not deposited by the plaintiffs with the clerk to the credit of the suit, in the sense claimed, nor did the order of the court direct that it should be so deposited. It directed that the clerk should deposit the money with the trust company to the credit of the suit, meaning that the money should be deposited in the trust company in the name of the suit, so as to be easily identified and drawn against. So, also, the action of the court in striking out from the order, as proposed for settlement, the clause before referred to, indicates an intention to

retain absolute control of the ultimate disposition of the money, and an absence of intention that a mere failure by the plaintiffs to recover in the suit should confer on the defendants any rights in respect of the money to be deposited.

There is another view which is conclusive against an award at this time of the money or any part of it to the defendants. The court has held that it can make no decision on the merits between the parties to this suit without affecting and prejudicing the rights of the two co-licensers who are not made parties. It thus has decided that it cannot recognize the defendants as representing, in this suit, such two co-licensers. Therefore, it cannot now award to the defendants such share of the money as belongs to such two co-licensers, and it has no means of determining, and no right to determine, in the absence of such two co-licensers, as parties to a controversy respecting the money, what such share is, and it cannot award such share to such two co-licensers, as long as they are not parties to such controversy. As respects such share of the money as might belong to the defendants, the court cannot determine that question in the absence of the two co-licensers, any more than it can determine the merits of the suit in such absence. Besides, it has decided that the interest and property of the three licensers under the license are essentially joint, and that it cannot, in this suit, settle their respective shares under the license. It follows, that it cannot settle in this suit, as it now stands, the share of the defendants in the money in the court, so as to award to them that share.

The case is not presented to the court in the view that the defendants are entitled to the whole or a part of the money as compensation for the damages sustained by them, or by the licensers, by the issuing of the injunction. If it were, it would be a sufficient answer to the claim to say, that the court could no more, in this suit, settle the amount of such damages, as respects the defendants, or their co-licensers, or all the licensers jointly, without the presence of such co-licensers, than it can settle the merits of the controversy without such presence. The interest of all the licensers under the license being joint, the defendants can have sustained no separable or severable damages through the operation of the injunction, which this court can ascertain or award, unless it has all the licensers before it.

Thus far, the question only of the claim of the defendants to receive the money has been considered. But many of the views stated are equally conclusive against the claim of the plaintiffs now to be paid the money. It was deposited on the plaintiffs' own offer, to secure the licensers against loss, in case they were in fact entitled to fees at the license rates, and in case the plaintiffs were not in fact entitled to the reduction claimed. As the plaintiffs obtained, through and by means of the deposit of the money, as a condition precedent, the granting and continuance of the injunction restraining the defendants from terminating the license, and from bringing suit for the patent fees, and have gone on working under the license, and enjoyed the consideration for which the money was deposited, the good sense of the transaction, and good faith towards all parties, require that the money should be regarded as having been deposited subject to a decision as to the title to it by a competent tribunal, whether this court or some other court. To award it now to the plaintiffs, would be to decide the merits of the suit in favor of the plaintiffs. It has not been established that the plaintiffs do not owe it to the licensers under the license. Although it is still the money of the plaintiffs, because it was their money when deposited, and the title to it has not passed to the defendants or the licensers, still it is subject, in the hands of this court, to the equitable claim and right, on the part of the defendants and the licensers, not to have it paid to the plaintiffs until it is properly established that the plaintiffs do not owe it to the licensers under the license.

Under these views, the fund may be held by this court, although brought into it as an incident of this suit, notwithstanding the suit is discontinued or the bill dismissed. It will be so held, subject to be disposed of on a proper application showing a state of facts demanding its disposition. It is not for this court to suggest in what tribunal, whether this or another, the adjudication as to the title to the money is to be made, or by what form of suit or proceeding, or what will be regarded by this court as sufficient warrant for disposing ultimately of the money. It can only declare, that it holds the money on the terms above stated, subject to the showing of a title to it by the plaintiffs or the licensers, as being or not being license fees due under the license.

For these reasons, I am of opinion that the motions of both parties should be denied.